### POLK v. MEAD et al.    (No. 542.)

Court of Civil Appeals of Texas. Waco.
Nov. 17, 1927.

Rehearing Denied Feb. 2, 1928.

**1. Bankruptcy** ⬅️**178(1)—Bankrupt husband's conveyance of mineral lease to wife to repay loan from wife's earnings held good as against trustee (Rev. St. 1925, art. 4616).**

Where wife, who ran rooming house under agreement with husband that her earnings in running it would belong to her as her separate estate, in 1923 loaned some of her earnings to husband, who in May, 1925, conveyed mineral lease to her to pay the loan, *held*, that, under Rev. St. 1925, art. 4616, providing that earnings of wife shall not be subject to payment of husband's debts, the conveyance to wife was good as payment of valid debt, as against husband's bankruptcy trustee appointed under voluntary petition filed in December, 1925, where none of debts due by bankrupt on filing of petition were owing when he conveyed lease.

**2. Husband and wife** ⬅️**266—Husband may, when not in fraud of creditors, give wife, as her separate estate, any portion of his separate or community estate.**

Husband may, when not in fraud of creditors, give his wife, as her separate estate, any

---

portion of his separate estate or any portion of community estate.

3. **Fraudulent conveyances** ⟨⟩=208—**Only creditor when gift is made can complain of husband giving wife separate estate or his interest in community estate.**

Where husband gives wife portion of his separate estate or of community estate to have as her separate estate, only creditor at time gift was made can complain.

Appeal from District Court, Navarro County; Hawkins Scarbrough, Judge.

Suit by E. M. Polk, trustee in bankruptcy of the estate of E. C. Mead, against Huldah Mead and husband. Judgment for defendants, and plaintiff appeals. Affirmed.

Davis, Jester & Tarver, of Corsicana, for appellant.

H. B. Daviss, of Corsicana, for appellees.

BARCUS, J. This suit was instituted by appellant, as trustee in bankruptcy of the estate of E. C. Mead, against Huldah Mead and husband, E. C. Mead, seeking to subject the one-eighth oil and mineral royalty in certain lands in Navarro county to the payment of the debts of Mr. Mead. The cause was tried to the court and resulted in judgment being rendered for appellee. The trial court filed his findings of fact and conclusions of law. It appears that Mr. and Mrs. Mead went to Corsicana in the early part of 1923; that Mr. Mead engaged in the oil business, superintending the drilling of some oil wells, and buying and selling oil leases, and Mrs. Mead undertook the running of a rooming house. Mrs. Mead made a net profit from said rooming house of three to four hundred dollars per month for some eight or ten months, and from the funds so earned by her she loaned her husband from twelve to fifteen hundred dollars, he agreeing at the time to repay same to her. In May, 1925, Mr. Mead came into ownership of the mineral lease in controversy as part of the community estate. About 10 days after he purchased same he conveyed said mineral lease to his wife as her separate estate, in payment for the money which she had loaned him in 1923. In December, 1925, Mr. Mead filed a voluntary petition in bankruptcy.

[1, 2] Appellant contends that the funds earned by Mrs. Mead in running the rooming house were community funds and were not the separate funds of Mrs. Mead, and that she could not loan the community funds to her husband and thereby create a valid debt which he was authorized to pay in preference to other debts that he might owe at the time he made the conveyance in 1925. The trial court found—and his finding is amply sustained by the evidence—that at the time and before Mrs. Mead started operating the rooming house, she and her husband had an agreement whereby the funds she made in running the same should and would belong to her as her separate estate, and she was to be responsible for and did pay all of the debts incurred in connection therewith. Article 4616 of the Revised Statutes 1925 provides that the earnings of the wife shall not be subject to the payment of the husband's debts, and this provision of the statutes has been upheld by our Supreme Court (Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S. W. 120), and it has been the holding of our courts from the earliest decisions that a husband can, when not in fraud of creditors, give his wife as her separate estate any portion of his separate estate or any portion of the community estate (Riley v. Wilson, 86 Tex. 240, 24 S. W. 394, and authorities there cited; Jordan v. Marcantell [Tex. Civ. App.] 147 S. W. 357; Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S. W. 120).

[3] Only a creditor at the time the gift was made can complain of a man giving to his wife as her separate estate, his separate funds or his interest in the community funds. Central Nat. Bank v. Barclay (Tex. Civ. App.) 254 S. W. 140; Earhart v. Agnew (Tex. Com. App.) 222 S. W. 188. There is no contention on the part of appellant that any of the debts due by Mr. Mead at the time he filed his petition in bankruptcy were in existence in 1923 when he gave his wife, as her separate estate, the money she made by her own labor in operating the rooming house. Under the authorities above cited, we think there can be no question about the validity of said gift by Mr. Mead to his wife of said money, and his act in so giving same constituted said money her separate estate. The court further found—and the finding is amply supported by the evidence—that Mrs. Mead loaned her husband $1,200 of her separate estate in 1923, and that the value of the property in May, 1925, which Mr. Mead at said time conveyed to his wife in satisfaction of said loan did not exceed $1,200.

Appellant contends that there is no pleading or evidence to support the finding of the court that the money which Mrs. Mead loaned her husband in 1923 was her separate estate. We overrule this contention. Appellee alleged specifically that the mineral lease in question was her separate estate, and that the same had been conveyed to her by her husband in payment of a debt of $1,200 which her husband owed her, and that said $1,200 was her separate estate. The testimony offered on the trial of the case, we think, amply supports the court's finding that the money made by Mrs. Mead while engaged in operating the rooming house became her separate estate because her husband both be-

fore and after she made same gave it to her as her separate estate.

We have examined all of appellant's assignments of error, and same are overruled. The judgment of the trial court is affirmed.