Richard M. Horn and Martha E. Horn v. Commissioner.
Horn v. Commissioner
Docket No. 5768-64.
United States Tax Court
T.C. Memo 1966-220; 1966 Tax Ct. Memo LEXIS 64; 25 T.C.M. (CCH) 1133; T.C.M. (RIA) 66220; October 3, 1966
*64 Held, embezzled funds are taxable as income to the embezzler in the years they were received even though the victim of the embezzlement instituted proceedings to recover the full amount of the embezzled funds prior to the assessment of any tax liability on that amount by the Government. Held, further, petitioner-wife, who admittedly filed joint returns with her husband who embezzled the funds, is jointly and severally liable for the tax due on such funds. Albert M. Horn, 1431 Candler Bldg., Atlanta, Ga., for the petitioners. J. Larry Broyles, for the respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined deficiencies in *65 petitioners' income tax for the years 1957, 1959, 1960, and 1961, in the amounts of $1,771.18, $2,570.66, $1,619.38, and $1,594.19, respectively. The only issues for decision are whether certain sums of money which Richard M. Horn admittedly embezzled from the U.S. Pipe Birmingham Employees Federal Credit Union No. 1610 (hereinafter referred to as the Credit Union) in the years here involved are taxable to him as income in those years, and, if so, whether Martha E. Horn is liable for the tax thereon. The case was submitted on a stipulation of facts with various exhibits attached, under Rule 30, Tax Court Rules of Practice. The facts important for a decision of this case may be summarized as follows. Richard M. and Martha E. Horn are husband and wife and they filed joint Federal income tax returns for each of the years 1957, 1959, 1960, and 1961 with the district director of internal revenue, Birmingham, Ala. Until 1961, Richard had been employed by the U.S. Pipe & Foundry Co., of Birmingham, Ala., for about 28 years. He had also been treasurer of the Credit Union for about 20 of those 28 years. As such he was responsible for the receipts and disbursements of the Credit Union's *66 funds. In July 1961, in the course of a regular examination of the Credit Union's finances by an examiner for the Bureau of Federal Credit Unions, it was discovered that there were irregularities in the accounts of the Credit Union. Upon completion of his examination the examiner reported a shortage of $61,488.64 in the Credit Union's funds. Richard admitted that over a period of 20 years he had embezzled approximately $20,000 from the Credit Union. It is stipulated that during the years 1941-1961 Richard embezzled a total of $51,452.61 from the Credit Union, including the amounts of $6,950.48, $9,737.73, $6,210.68, and $6,893.40 in the years 1957, 1959, 1960, and 1961, respectively. The latter amounts are the exact amounts determined by respondent to be additional taxable income to petitioners in those years in his notice of deficiency. Richard was indicted for embezzlement in a U.S. District Court in Alabama and entered a plea of guilty to the charges on November 9, 1961. In December 1962 the Credit Union filed suit against Richard in an Alabama court to recover the amounts embezzled. A verdict was rendered in favor of the Credit Union against Richard in the amount of $61,488.64 *67 on November 5, 1964, and judgment in that amount was entered by the court against Richard on November 10, 1964. Up to the date this case was submitted to this Court, Richard had not repaid any of the funds he embezzled, nor had he made any payments on the judgment in favor of the Credit Union mentioned above. At the time the funds were embezzled Richard did not advise the Credit Union of his taking the money nor did he acknowledge to the Credit Union any obligation to repay the funds. The funds embezzled by Richard were used without restriction by him for his own personal purposes. Petitioners did not include any of the embezzled funds in income reported by them on their returns for 1957, 1959, 1960, and 1961. On the above facts respondent has determined that the funds embezzled by Richard in the years before us were taxable to petitioners as additional income in those years, relying primarily on James v. United States, 366 U.S. 213 (1961). Petitioners argue that the James case is distinguishable and not controlling here because it did not involve a situation where, as here, the victim of the embezzlement had instituted proceedings to obtain a judgment against the *68 embezzler for the full amount embezzled prior to the assertion of any tax liability on that amount by the Government. They argue that to permit the Government to assess tax liabilites against the embezzler might interfere with the opportunity of the victim of the embezzlement to recover as much as possible on the judgment. Without belaboring the point, we can find no legal merit in petitioners' argument - and that is the basis on which we must decide this case. In James v. United States, supra, the Supreme Court very clearly held that embezzled funds are includable in gross income in the year in which they are received even though the embezzler may be adjudged liable to repay the funds in a later year. In the majority opinion, at 219, it is stated: When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil Consolidated *69 v. Burnet, * * * 286 U.S. 417] at p. 424. * * * We do not believe the fact that the Credit Union obtained a judgment against Richard distinguishes this case from the James case. In L. M. Muldrow, 38 T.C. 907 (1962), this Court held that the fact that an embezzler, following discovery of the embezzlement, had conveyed all of his assets to a trustee for the benefit of the victims and had admitted his indebtedness, did not shield him from liability for tax on the embezzled funds in the year they were embezzled, stating that any such belated acknowledgment of liability may not be related back to the year of conversion. It is even more fundamental that the institution of suit by the victims to recover the embezzled funds, and the taking of judgment therein, will not serve as an acknowledgment by the embezzler, related back to the years in which the funds were embezzled, of an obligation to repay the embezzled funds. Here Richard received the embezzled funds in the years before us with no restriction on their use and with no acknowledged obligation to repay them, and the funds were includable in petitioners' gross income for tax purposes in those years. Petitioners' *70 argument is somewhat reminiscent of the argument made in behalf of the taxpayers in Commissioner v. Wilcox, 327 U.S. 404 (1946), which was overruled by James v. United States, supra. We think the James case is controlling here, and we must hold for respondent on this issue. See also, Marvin E. Nerem, 41 T.C. 338 (1963). Petitioners also contend that even if the embezzled funds are includable in Richard's taxable income Martha should not be held liable for the tax thereon because she had no knowledge of the illegal funds on which the tax is to be assessed. First, there is no evidence to support petitioners' contention that Martha had no knowledge of the embezzled funds and did not benefit therefrom. But more basic is section 6013(d)(3), I.R.C. 1954, which provides: (3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. See also, sec. 1.6013-4(b), Income Tax Regs.; Marie A. Dolan, 44 T.C. 420, 426 et seq.; Jack Douglas, 27 T.C. 306, affirmed sub nom. Sullivan v. Commissioner, 256 F. 2d 4. *71 It is only in exceptional circumstances that a taxpayer who signs a joint return can avoid the joint and several liability for the tax due thereon. This is where, for some reason, the taxpayer can prove that the return was not in fact a joint return. Such is not the case here. It is stipulated that the returns for each of the years were joint returns and there is no evidence that Martha executed the returns under duress or involuntarily. Having filed joint returns with Richard for each of the years here involved, Martha is jointly and severally liable with him for the tax due on the income that was and should have been reported on those returns. [1]
Decision will be entered for respondent. Footnotes
1. See William G. Hackney, T.C. Memo 1965-127↩, a Memorandum Opinion of this Court in which it was held, on almost identical facts, that the wife was liable for the tax on funds embezzled by her husband of which she had no knowledge.